IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

THE CHLORINE INSTITUTE, INC.,
THE AMERICAN CHEMISTRY
COUNCIL, THE FERTILIZER
INSTITUTE, ERCO WORLDWIDE,
and PVS CHEMICALS,

      Plaintiffs,

v.

SOO LINE RAILROAD, d/b/a
CANADIAN PACIFIC RAILWAY
COMPANY,

      Defendants.
_____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

**Civil No._____**

**Honorable_____**

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW the Plaintiffs, and complain against Defendants Soo Line Railroad, d/b/a Canadian Pacific Railway Company (collectively referred to as "CP") as follows:

### NATURE OF ACTION

1. This is a civil action seeking a Declaratory Judgment, Preliminary and Permanent Injunctive Relief relating to CP's imminent embargo of chlorine, sulphur dioxide and other toxic-by-inhalation ("TIH") commodities moving by rail over the lines of the CP. This embargo is contained in CP Tariff No. 8, Item 55, and becomes effective April 14, 2014. CP Tariff No. 8 is attached as Exhibit A and incorporated by reference as though set forth in full. (Ex. A at p. 7.)

2. CP's Tariff No. 8, Item 55 provides that CP will not accept for transportation TIH materials tendered by any shipper or any other railroad in rail cars that do not meet certain construction specifications as set forth in Item 55. These required construction standards are significantly different than those required by the United States Department of Transportation in the United States and those of Transport Canada in Canada.

3. CP's Tariff No. 8, Item 55 is unlawful and unenforceable as it is in violation of 49 U.S.C. § 5103 and 49 U.S.C. § 11101. Plaintiffs seek the issuance of preliminary and permanent injunctive relief enjoining CP from enforcing or attempting to enforce the provisions of Tariff No. 8, Item 55, or requesting or demanding that its provision of common carrier rail transportation service for Plaintiffs be governed by or subject to such provisions. In support thereof, Plaintiffs aver as follows:

## THE PARTIES

4. Plaintiff the Chlorine Institute Inc. ("Chlorine Institute"), is a Connecticut not-for-profit corporation with its headquarters at 1300 Wilson Blvd. Arlington, VA 22209. The Chlorine Institute is a 200-member trade association of chlor-alkali producers, packagers, distributors, users and suppliers. Its mission is the promotion of safety and protection of human health and the environment in the manufacture, distribution and use of chlorine, sodium hydroxide, potassium hydroxide and sodium hypochlorite, plus the distribution and use of hydrogen chloride. The Chlorine Institute's North American producer members account for more than 95 percent of the total chlorine production of the United States, Canada and Mexico.

5.      Plaintiff American Chemistry Council ("ACC") is a New York not-for-profit corporation with its headquarters at 700 Second Street, NE, Washington, DC 20002.  ACC is an industry association that represents America's leading chemical producers.  ACC's 130 members account for approximately 85 percent of the US capacity for the production of basic chemicals and manufacture a wide array of products, including products designated as TIH, including chlorine and sulphur dioxide.  These products, including those designated as TIH, are offered for shipment by railroads including the Canadian Pacific Railway in the United States and Canada.

6.      Plaintiff The Fertilizer Institute ("TFI") is a Delaware not-for-profit corporation with its headquarters at 425 Third Street, S.W., Suite 950, Washington, DC 20024.  TFI is the national trade association of the fertilizer industry.  TFI members rely heavily on rail transportation for the safe and efficient movement of anhydrous ammonia, which is the basic building block required to produce all nitrogen fertilizers.  Anhydrous ammonia accounts for more than 45 percent of the TIH materials transported by rail each year, including the Canadian Pacific Railway in the United States and Canada.

7.      Plaintiff ERCO Worldwide is a division of Superior Plus LP, a Canadian Limited Partnership, with its headquarters located at 302 The East Mall, Suite 200, Toronto, Ontario, Canada.  ERCO Worldwide has five manufacturing plants in Canada, two in the United States and one in Chile.  ERCO's main business lines are the manufacture and sale of sodium chlorate and the manufacture and sale of chlor-alkali chemicals.  ERCO's chlor-alkali business produces chlorine and other chlor-alkali products that serve a variety of industries including municipal and industrial water

3

treatment, food processing, fertilizers, agricultural intermediates, and oil and gas. Within the United States, ERCO's facilities are located at Port Edwards, Wisconsin and Valdosta, Georgia. ERCO Worldwide is a member of both the Chlorine Institute, Inc. and the American Chemistry Council. ERCO Worldwide ships chlorine on the Canadian Pacific Railway in cars that are constructed on non-normalized steel and would be affected by the provisions of Tariff 8 that are the subject of this litigation.

8. Plaintiff PVS Chemicals, Inc. is the parent of PVS Chemical Solutions, Inc., both located in Detroit, Michigan at 10900 Harper, Detroit, MI 48213. PVS Chemicals is an international manufacturer, distributor and marketer of water-treatment and other chemical products. PVS ships sulphur dioxide in railcars out of the facilities of its supplier, Teck Metals Ltd., located in Trail, British Columbia. These shipments originate on the Canadian Pacific Railway, and are destined for water treatment and other facilities in the United States and Canada. Approximately one-third of the PVS railcar fleet is made up of rail cars constructed of non-normalized steel. PVS is a member of both the Chlorine Institute, Inc. and the American Chemistry Council.

9. Defendant Soo Line Railroad Company is a wholly-owned subsidiary of the Soo Line Corporation. Soo Line Railroad Company and Soo Line Corporation are Minnesota corporations that maintain their principal places of business in Minneapolis, Minnesota. Defendant Canadian Pacific Railway Company is a registered trade name under which Soo Line Railroad Company does business.

10. Soo Line Corporation is owned 100% indirectly through intermediate companies by CP, which is a wholly owned subsidiary of Canadian Pacific Railway

4

Limited. CP and Canadian Pacific Railway Limited are incorporated federally under the Canada Business Corporation Act and maintain their principal places of business in Calgary, Alberta, Canada.

## JURISDICTION AND VENUE

11. Jurisdiction is founded upon 28 U.S.C. § 1331, as this action raises substantial federal questions relating to the Transportation of Hazardous Materials, 49 U.S.C. § 5101 et seq.; and the Interstate Commerce Commission Termination Act of 1995, 49 U.S.C. § 10101 et seq.

12. Jurisdiction is also founded on 28 U.S.C. § 1332(a) (3) because the parties are citizens of different states; citizens of a foreign state are additional parties; and the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs.

13. This Court is authorized to issue Declaratory Judgments under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, implemented through Federal Rule of Civil Procedure 57, and to issue the Preliminary and Permanent Injunctive Relief requested by Plaintiffs under Federal Rule of Civil Procedure 65.

14. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391 (b) and (c) because CP has its U.S. corporate headquarters within this District, a substantial part of the events giving rise to the claims are occurring within this District, and because Defendant Soo Line maintains its principal place of business within this District.

## BACKGROUND AND RELEVANT FACTS

15. TIH materials, including chlorine and sulphur dioxide are used to purify water supplies and to treat waste water and sewage materials. The use of these TIH

materials is essential to public health and to the maintenance of a safe and non-hazardous environment. Approximately 84 percent of large drinking water systems, including the Minneapolis, Minnesota water system, use elemental chlorine for disinfection.

16. Chlorine disinfectants are also used extensively in food production and healthcare settings to guard against life-threatening germs. Chlorine chemistry is essential to manufacturing 85 percent of all pharmaceuticals, 25 percent of all medial plastics, 70 percent of all disposable medical applications, and 95 percent of crop protection chemicals.

17. The largest portion of chlorine production goes into producing polyvinyl chlorine (PVC), mostly as building and construction materials such as pipe, siding, windows, fences, decks and rails. PVC is also used to manufacture medical devices, artificial limbs, first-responder equipment, and much more. Chlorine chemistry plays a significant role in the production of polyurethane foam insulation, silicon computer chips and titanium metal for spacecraft and artificial joint replacements.

18. In order to realize these benefits of chlorine, it is essential to deliver chlorine from production locations throughout North America to the end users which are often significant distances apart. Approximately 85 percent of that long distance delivery takes place via railroad tank car. Rail transportation of chlorine has over time proven to be a safe and efficient way to move that product. The continued ability to economically and safely transport chlorine via rail is vital both to the economy and to public health, safety and security.

19. Ammonia is the most economical and efficient source of nitrogen for most farmers and is the primary ingredient in most all nitrogen fertilizers. Additionally, it is an essential ingredient in many finished fertilizers. Ammonia is transported by rail, truck, barge or pipeline from the production site to a fertilizer terminal, a fertilizer dealer or farm cooperative for formulation into other fertilizers or direct application to growing crops.

20. Sulphur dioxide shipped by PVS Chemicals, Inc. ("PVS") is a TIH material with widespread application throughout North America. Sulphur dioxide is used extensively in paper production, food processing, mining and manufacturing and sewage and waste water treatment.

21. CP has testified in statements before the Surface Transportation Board that it has a statutory common carrier obligation to transport chlorine and other TIH commodities, however, absent that legal requirement it would not carry such commodities for fear that its negligent behavior in transporting such commodities might lead to "ruinous liability" for CP.

22. In recent years, CP has taken actions designed to eliminate or severely limit its common carrier obligation to transport TIH materials.

23. CP's Tariff 8, Item 55 is the latest effort to reduce the number of TIH shipments that CP transports, and CP has made no effort to deny or refute that fact.

24. CP's Tariff 8, Item 55 would substitute the judgment of CP for that of the Secretary of Transportation in deciding which rail tank cars are appropriate for

transporting TIH materials with the effect of severely limiting the number of TIH shipments moving on the CP rail system.

25. CP's Tariff 8, Item 55 would prohibit any movement of TIH materials in any rail car that does not comply with the CP specification that is significantly different than those specifications required by the Secretary of Transportation.

26. CP's Tariff 8, Item 55 would prohibit the movement of rail cars containing TIH, in any quantity including rail cars that had recently contained a TIH material even though the rail car contains only a residue of TIH material is some relatively negligible quantity.

27. CP's Tariff 8, Item 55 would prohibit any shipper or any other railroad from tendering a rail tank car to CP for transportation whether CP originated the shipment, was an intermediate rail carrier in the transportation of the TIH shipment and with respect to rail tank cars that are returning to the point of shipment with only a residue of TIH material in them.

28. The result of the CP's Tariff 8, Item 55 restrictions would be to strand both loaded and residue TIH rail tank cars during their movement, either to destination or returning to origin in a virtual "no-man's-land" where further movement would be rendered essentially impossible, and which would inevitably lead to chaos in the Nation's vital rail transportation sector, with different railroads requiring different rail tank cars to conduct TIH transportation.

29. CP, despite efforts of affected shippers and receivers of essential TIH materials, has made no exception to its TIH movement prohibitions regardless of the

public health or environmental consequences of its unilateral and unprecedented prohibitions.

## COUNT I
### Declaratory Relief-Violation of the Hazardous Materials Transportation Act

30. Plaintiffs incorporate by reference the allegations in paragraphs 1 through 29 of this Complaint, as if they were set forth fully herein.

31. By its terms CP Tariff 8, Item 55 requires that rail tank cars offered for transportation on CP must be constructed of materials that are different than those materials required by the Secretary of Transportation or any other railroad operating within the United States.

32. CP Tariff 8, Item 55 directly contravenes the provisions of 49 U.S.C. § 5103 that gives the Secretary of Transportation exclusive jurisdiction and plenary right to establish the specifications for rail tank cars carrying TIH or any other hazardous material offered for transportation within the United States.

33. An actual and justiciable controversy exists between Plaintiffs and CP as to the enforceability of Item 55. This controversy is of sufficient immediacy and magnitude to warrant the issuance of declaratory relief, which will resolve some or all of the existing controversy between Plaintiffs and CP.

## COUNT II
### Declaratory Relief-Violation of CP's Common Carrier Obligation

34. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 33 of this Complaint, as if they were set forth fully herein.

35. CP's Tariff 8, Item 55 requires any shipper, receiver or rail carrier to comply with the rail tank car specifications set forth in the Item, and failing to do so will result in CP refusing to accept the TIH loaded or residue shipment for transportation.

36. The refusal to transport TIH shipments tendered to it in rail tank cars that are fully compliant with all specifications set forth by the Secretary of Transportation is contrary to the CP's common carrier obligation set forth in 49 U.S.C. § 11101.

37. An actual and justiciable controversy exists between Plaintiffs and CP as to the enforceability of Item 55 in light of the CP's common carrier obligation to transport properly tendered TIH shipments. This controversy is of sufficient immediacy and magnitude to warrant the issuance of declaratory relief, which will resolve some or all of the existing controversy between Plaintiffs and CP.

## COUNT III
## Preliminary Injunction

38. Plaintiffs incorporate by reference paragraphs 1 through 37 of this Complaint as though they were set forth fully herein.

39. As a direct and proximate result of CP's Tariff 8, Item 55, shippers and receivers of TIH materials including chlorine and sulphur dioxide will suffer immediate and significant and irreparable business injury due to the inability to use a significant portion of their rail tank car fleets.

40. As a direct and proximate result of CP's Tariff 8, Item 55 those receivers and users of TIH materials including chlorine and sulphur dioxide will suffer immediate, substantial and irreparable injury including the inability to properly treat water and

wastewater for municipal use, inability to properly disinfect food and food products and inability to conduct other business operations.

41. As a direct and proximate result of CP's Tariff 8, Item 55 TIH commodities currently moving in the affected rail tank cars will necessarily and inevitably be diverted to truck transport that the Department of Transportation has consistently found to be less desirable than the rail transport now used.

42. The irreparable injury to Plaintiffs and to the public at large can only be remedied by injunctive relief.

43. Plaintiffs have a substantial likelihood of success on the merits of this action.

44. The injunctive relief sought by Plaintiffs would not alter the status quo. Prior to the April 14, 2014, effective date of Tariff, 8, Item 55, CP has routinely moved TIH commodities in the very rail tank cars it now seeks to prohibit. Granting injunctive relief would simply put the parties in the same position in which they have operated for many years, and would allow affected receivers and users of critical TIH materials to continue to protect themselves and their communities.

45. Pursuant to Federal Rule of Civil Procedure 65, this Court should issue a Preliminary Injunction enjoining CP during the time between the pendancy of the lawsuit and the entry of final judgment, from enforcing or attempting to enforce the provisions of Tariff 8, Item 55 upon Plaintiffs or members of Plaintiff trade associations, or requesting or demanding that the provision of common carrier rail transportation for Plaintiffs or members of Plaintiff trade associations be governed by or be subject to those provisions.

## COUNT IV
### Permanent Injunctive Relief

46. Plaintiffs incorporate by reference paragraphs 1 through 45 of this Complaint as though they were set forth fully herein.

47. Regardless of whether this Court grants Plaintiffs a Preliminary Injunction as requested in Count III herein, this Court should issue, as part of any final judgment in the action, a permanent injunction enjoining CP from enforcing or attempting to enforce any of the tank car specification provisions contained in CP Tariff 8, Item 55, upon Plaintiffs, any member of Plaintiff trade associations or in requesting or demanding that the provision of common carrier rail transportation service for Plaintiffs or any member of Plaintiff trade associations be governed by or subject to such provisions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court:

A. Enter judgment declaring that the tank car specification requirements of CP Tariff 8, Item 55 are unlawful and in violation of the Hazardous Materials Transportation Act 49 U.S.C. § 5103.

B. Enter judgment declaring that requiring or demanding that CP's provision of common carrier rail transportation service is conditioned upon shipper compliance with the provisions of CP Tariff 8, Item 55, is unlawful and in violation of the Interstate Commerce Commission Termination Act § 11101.

C. Grant Plaintiffs a Preliminary Injunction restraining and/or enjoining CP from enforcing or attempting to enforce any of the tank car specification requirements

contained in CP Tariff 8, Item 55 upon Plaintiffs or any member of Plaintiff trade associations, or requesting or demanding that the provision of common carrier rail transportation service for Plaintiffs or any member of Plaintiff trade associations be governed by or subject to such provisions.

      D.      Grant Plaintiffs a Permanent Injunction enjoining CP from enforcing or attempting to enforce any of the tank car specification requirements contained in CP Tariff 8, Item 55 upon Plaintiffs or any member of Plaintiff trade associations, or requesting or demanding that the provision of common carrier rail transportation service for Plaintiffs or any member of Plaintiff trade associations be governed by or subject to such provisions.

      E.      Grant Plaintiffs such other and further relief, including costs, as the Court may deem just and proper.

Dated: April 10, 2014.      **LARSON • KING, LLP**

      By: s/ Stephen P. Laitinen
      Stephen P. Laitinen (#239446)
      Jennifer L. Young (#0389950)
      2800 Wells Fargo Place
      30 East Seventh Street
      St. Paul, Minnesota 55101
      Telephone: (651) 312-6500
      Facsimile: (651) 312-6618
      E-mail: slaitinen@larsonking.com.
            jyoung@larsonking.com.

and

**LAROE, WINN, MOERMAN & DONOVAN**

Paul M. Donovan (*pro hac vice applied for*)
LaRoe, Winn, Moerman & Donovan
1250 Connecticut Ave, N.W. Suite 200
Washington, DC 20036
Telephone:  (202) 298-8100
Facsimile: (202) 298-8200
E-mail :  paul.donovan@LaroeLaw.com.

*Attorneys for Plaintiffs*
*The Chlorine Institute, Inc.,*
*American Chemistry Council,*
*The Fertilizer Institute, ERCO*
*Worldwide, and PVS Chemicals*

LK#1398875-v.1