# Martin, Matt  CLEV

**From:** Martin, Matt  CLEV
**Sent:** Thursday, March 27, 2014 11:37 AM
**To:** Martin, Matt  CLEV
**Subject:** FW: Improving Safety Standards - TIH Tank Cars

*[Handwritten annotation:] This is Exhibit "A" referred to in the Affidavit of GLEN WILSON Sworn before me this 22 day of April A.D. 2014*

*[Signature]*

**CASSANDRA P. QUACH**
*Barrister and Solicitor*

-----Original Message-----
**From:** Jane O'Hagan [Jane_O'Hagan@cpr.ca]
**Sent:** Wednesday, March 12, 2014 06:22 PM Eastern Standard Time
**To:**
**Subject:** Improving Safety Standards - TIH Tank Cars

Dear Customer,

Improving safety standards is a priority for Canadian Pacific. This is important for the protection of the communities we move through, as well as our employees and the general public. CP believes that one of the most immediate and effective ways to make Toxic Inhalation Hazard ("TIH") shipments safer is to ship in safer tank cars.

1) Effective April 7, 2014, all TIH commodities originating on CP lines must be shipped in normalized steel tank cars. We will be issuing an update to our Tariff 8 that will contain the following language:

   *Tank Car Construction Item 53*
   *Tank cars constructed of ASTM A516 or TC128 steels tendered to CP for the transportation of TIH (refer item 56) must be normalized and meet the requirements of Chapter 2 - Paragraph 2.2.1.1 of the Association of American Railroads (AAR) Manual of Standards and Recommended Practices, Section C Part III, Specifications for Tank Cars (M-1002).*
   *Before billing can be accepted the customer is required to provide documentation demonstrating their fleet meets this standard.*

2) Effective January 1, 2016, all shipments of TIH commodities (see Appendix below) tendered to Canadian Pacific that do **not** meet the applicable authorized tank car specification for tank cars built on or after March 16, 2009 in Title 49 of the United States Code of Federal Regulations (see § 173.244), **must** be equipped with top fittings that prevent the release of product when any top fitting is sheared off (see § 179.102–3 (a)(2)). These top fittings can significantly reduce the risk of product loss in the event of damage to the protective housing and the associated top fittings.

If you have any further questions please contact your account manager.

Regards,
Jane O'Hagan
EVP & Chief Marketing Officer
Canadian Pacific

--------------------------- IMPORTANT NOTICE - AVIS IMPORTANT --------------------------- Computer viruses can be transmitted via email. Recipient should check this email and any attachments for the presence of

Exhibit A

viruses. Sender and sender company accept no liability for any damage caused by any virus transmitted by this email. This email transmission and any accompanying attachments contain confidential information intended only for the use of the individual or entity named above. Any dissemination, distribution, copying or action taken in reliance on the contents of this email by anyone other than the intended recipient is strictly prohibited. If you have received this email in error please immediately delete it and notify sender at the above email address. Le courrier electronique peut etre porteur de virus informatiques. Le destinataire doit donc passer le present courriel et les pieces qui y sont jointes au detecteur de virus. L' expediteur et son employeur declinent toute responsabilite pour les dommages causes par un virus contenu dans le courriel. Le present message et les pieces qui y sont jointes contiennent des renseignements confidentiels destines uniquement a la personne ou a l' organisme nomme ci-dessus. Toute diffusion, distribution, reproduction ou utilisation comme reference du contenu du message par une autre personne que le destinataire est formellement interdite. Si vous avez recu ce courriel par erreur, veuillez le detruire immediatement et en informer l' expediteur a l' adresse ci-dessus. ------------------------------- IMPORTANT NOTICE - AVIS IMPORTANT -------------------------------



# Indemnification and liability   *Item 54*

Customer shall fully indemnify and defend CP from and against any and all liabilities, claims, lawsuits, actions, applications, demands, complaints, loss, harm, judgments, liens, awards, costs (including, without limitation, attorney's fees and other reasonable costs of litigation), emergency response and evacuation costs, remediation costs, and government oversight costs, damages (including without limitation special and consequential damages), injury to or death of persons, or adverse effects on wildlife or the environment (collectively "Liabilities") which are caused by or arise from:

- Any failure of, or defect in Private Equipment tendered by Customer for the transportation of TIH commodity;
- Any actual or threatened discharge, release, leak or escape of the TIH commodity from the Private Equipment tendered by Customer for the transportation of TIH commodity;
- Loading, sealing and/or securing the TIH commodity by Customer in the Private Equipment;
- Removal, unloading, transfer, delivery, treatment, dumping, storage, or disposal of the TIH commodity carried in the Private Equipment; or
- Failing to properly placard or failing to provide complete and accurate shipping information concerning the TIH commodity in such Private Equipment.

However, the Customer shall have no such obligation to indemnify CP to the extent that Liabilities arise from the negligence or willful misconduct of CP. Additionally, nothing contained in this Item 54 shall extend to limit any liability owing to the Shipper by CP that is not permitted by law.

Customer's indemnity obligations under this Item do not include claims for alleged loss, damage, or delay to the TIH commodities.

### Joint liability

If Liabilities are caused in whole, or in part, by the joint, contributory, or concurrent negligence or fault of CP, responsibility for Liabilities shall be adjudicated under usual principles of comparative fault under the law governing joint liability, whereby the trier of fact shall determine the percentage of responsibility for CP, Customer, and any other party. CP shall be liable for the amount of such Liabilities allocated to CP in proportion to CP's percentage of responsibility. Customer shall be liable for all other Liabilities.

## Tank Car Construction   *Item 55*

Tank cars constructed of ASTM A516 or TC128 steels tendered to CP for the transportation of TIH (refer item 56) must be normalized and meet the requirements of Chapter 2 - Paragraph 2.2.1.1 of the Association of American Railroads (AAR) Manual of Standards and Recommended Practices, Section C Part III, Specifications for Tank Cars (M-1002). Before billing can be accepted the customer is required to provide documentation demonstrating their fleet meets this standard.

STATEMENT OF PVS CHEMICALS REGARDING THE IMPACT OF PROPOSED AMENDMENT TO
CANADIAN PACIFIC TARIFF 8

*This is Exhibit "B" referred to in the Affidavit of GLEN WILSON Sworn before me this 22 day of April A.D. 2014*

*[signature]*
CASSANDRA P. QUACH
Barrister and Solicitor

*Background*

PVS Chemicals, Inc., together with its subsidiaries (PVS), is an international manufacturer, distributor and marketer of water-treatment and other chemical products. Headquartered in Detroit since its founding in 1945, PVS currently employs more than 800 people worldwide in the United States, Canada, Europe and Asia.

For years, PVS has shipped liquid sulfur dioxide (Product) in railcars out of the facilities of its supplier, Teck Metals Ltd., located in Trail, British Columbia. Although PVS has not incurred a *single* safety incident in all its years of railcar shipments out of Trail, the proposed amendment to Canadian Pacific's Tariff 8 would, effectively overnight, sideline 31 of PVS's railcars, immediately cutting off all Product shipments previously made in those railcars. The impact upon PVS, its customers, and the environment would be sudden and severe.

*Impact on PVS's Customers*

PVS customers affected by this proposed Tariff Amendment would include the following, among others:

- **Paper Mills**. PVS's Product is a critical raw material used by five paper mills in Canada and one paper mill in the United States. If allowed, the proposed Tariff Amendment would have a materially adverse impact upon these paper mills' receipt and use of this critical raw material.

- **Food Processors**. PVS's Product is a critical raw material used by one sugar beet plant in Canada, five sugar beet plants in the United States, and two corn millers in the United States. If allowed, the proposed Tariff Amendment would have a materially adverse impact upon these food processors' receipt and use of this critical raw material.

- **Manufacturers and Miners**. PVS's Product is a critical raw material used by one gold mining company in Canada and four intermediary manufacturers in the United States. If allowed, the proposed Tariff Amendment would have a materially adverse impact upon their receipt and use of this critical raw material.

- **Water Treatment Facility**. PVS's Product is a critical raw material used by the water treatment facility of a major municipality in California to de-chlorinate the municipality's waste water. If allowed, the proposed Tariff Amendment would have a materially adverse impact upon the municipality's receipt and use of this critical raw material.

*Impact on Safety and the Environment*

- **Contaminated Water**. By cutting off Product shipments to the water treatment facility of PVS's municipal customer in California, the Tariff Amendment will potentially result in the unavoidable discharge of untreated chlorinated water to the environment, causing a material adverse impact upon 12.4 million water consumers in California and Nevada.

- **Increased Truck Traffic**. Forbidding the shipment of PVS's Product in its existing railcars will force PVS to attempt to meet its obligations to customers through other means of shipment, primarily truck. PVS expects that other affected railcar shippers will dramatically increase their truck shipments as well.

Exhibit B

This sudden increase in truck shipments can be expected to have a materially adverse affect on traffic safety in both Canada and the United States.

*Impact on PVS*

- **Lost Revenue**. PVS estimates that, if allowed, the proposed Tariff Amendment will reduce PVS's annual sales revenues by $6 million (Canadian).

- **Railcar Lease Commitments**. PVS will be committed by existing leases to pay rent totaling $818,797 (Canadian) for 31 railcars that will, due to the proposed Tariff Amendment, become obsolete overnight.

- **Railcar Replacement**. If allowed, the proposed Tariff Amendment will force PVS to spend a total of $1,586,634 (Canadian) to replace its now-obsolete railcars. Substitute tank cars are not available in the market; the lead time on new build cars is projected to be 24 months. At this time, the interim car cannot be utilized at Trail because of track limitations coming into the facility.

All of these losses and increased dangers can be avoided, without any adverse impact upon the safety of people or the environment, by stopping the proposed Tariff Amendment.

PVS joins all of the other affected railcar shippers in requesting that the Amendment be prohibited altogether or delayed for at least two years to give all affected companies reasonable time to make all of the adjustments that will be required to meet the new requirements. In addition, as we reposition our fleet, we request that CP publish a contract freight rate of zero dollars to move empty cars between Trail BC and Chicago IL.



**Olin**
**CHLOR ALKALI PRODUCTS**

490 Stuart Road, NE, Cleveland, Tennessee 37312
423/336-4896 Phone • 423/336-4876 Fax

March 27, 2014

This is Exhibit "C" referred to in the
Affidavit of GLEN WILSON
Sworn before me this 22
day of April A.D. 2014

_____
CASSANDRA P. QUACH
*Barrister and Solicitor*

VIA E-MAIL [Paul_Guthrie@cpr.ca]
AND OVERNIGHT MAIL
Canadian Pacific Railway Company
Attn: Paul Guthrie
      Chief Legal Officer and Corporate
      Secretary
Gulf Canada Square
401 – 9th Avenue SW
Calgary, Alberta, Canada, T2P 4Z4

Re:   Proposed CP Tariff 8, Item 55 (Effective April 7, 2014)

Dear Mr. Guthrie:

This letter concerns Olin Canada ULC and Olin Corporation, both d/b/a Olin Chlor Alkali Products (together "Olin") rail movements of chlorine from its Becancour, QC facility to destinations in Quebec and the United States.

Recall that on April 4, 2011, Canadian Pacific Railway Company ("CP") notified Olin that it would no longer perform these rail movements under contract #159064, which was negotiated between the parties at arm's length. At this time, CP informed Olin that it would be put under tariff. On March 12, 2014, CP notified Olin that it planned to revise Item 53 of its Hazardous Commodities Tariff 8, effective as of April 7, 2014, as enclosed herewith (while the notice to Olin referenced a revision to Item 53, Tariff 8 defines the revision as Item 55).

Olin is extremely concerned with the proposed revision to Item 55, which will, among other things, require that all chlorine originating at its Becancour facility be shipped in normalized steel tank cars that meet certain criteria chosen solely by CP without any input from any other source. This unilaterally imposed provision is a clear violation of CP's common carrier obligations because CP is arbitrarily refusing to ship TIH in railcars that, while not meeting CP's arbitrary railroad requirements, are expressly approved and legal under all applicable Canadian and American laws. Further, Canadian federal agencies have exclusive authority to set railcar standards in Canada, so this proposed language infringes upon the government's authority. In taking this approach, CP presumably intends to unreasonably increase the burdens on shippers like Olin. As such, the proposed revision to Item 55 runs afowl of the applicable law.

In light of the foregoing, Olin demands that CP immediately rescind the newly proposed language for Item 55 of Tariff 8. In the event that CP does not rescind this language, CP will be in violation of its common carrier obligations, and Olin will suffer direct damages.

Exhibit C

**March 27, 2014**
**Page 2**

This letter is written without waiver of or prejudice to any rights Olin may have under contract, before any federal agency, or under applicable federal, state, provincial, or local law.

Please feel free to contact me directly should you wish to discuss this matter further.

Sincerely,

**OLIN CORPORATION**

*J. Matthew Martin*

J. Matthew Martin, Esq.
Deputy General Counsel and
Vice President – Chlor Alkali Products Division